IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **EFRAIN CHAVEZ MALDONADO,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **EP-15-cv-221-KC** |
| | § | |
| **ADRIAN P. MACIAS, et al.,** | § | |
| | § | |
| **Respondents**. | § | |

## <u>ORDER</u>

On this day, the Court considered Petitioner Efrain Chavez-Maldonado's Petition for

Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), ECF No. 1.  For the reasons

set forth herein, the Petition is hereby **GRANTED** in part.

### I.    BACKGROUND

Petitioner is a citizen and national of Mexico, residing in Chihuahua, Mexico, from about

2007 until his request for asylum on October 12, 2013.  Pet. 2.  On October 11, 2013, Petitioner

witnessed the murder of his twin brother by the Chihuahua State Police, who then kidnapped and

beat Petitioner.  Pet. 1.  On the following day, October 12, 2013, Petitioner arrived from Mexico

at the Bridge of the Americas Port of Entry in El Paso, Texas, as an applicant for asylum.  Resp.

1; Mem. 8.  Upon arriving at the port of entry, Petitioner was deemed to be inadmissible because

he was not in possession of a valid entry document, and he was placed in the custody of the

United States Immigration and Customs Enforcement ("ICE").  Resp. 1; Pet. 3.  On October 30,

2013, Petitioner received a positive credible fear determination by the United States Citizenship

1

and Immigration Services upon his expression of fear of death if he were to return to Mexico. Pet. 4.  Removal proceedings were initiated against him on November 1, 2013.  Resp. 1.

Petitioner's first hearing before the Immigration Judge was held on November 19, 2013; he requested and was granted a continuance to seek an attorney.  Resp. 1; Reply 10.   At Petitioner's next hearing before the Immigration Judge, on November 27, 2013, Petitioner requested and was granted a continuance to file an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  Resp. 1.  On December 17, 2013, Petitioner requested and was granted a continuance to prepare his case.  Resp. 2.  At a subsequent hearing on January 7, 2014, Petitioner requested and was granted a continuance to file his asylum application.  Resp. 2.  On February 6, 2014, the Government requested and was granted a continuance to respond to Petitioner's Motion for Administrative Closure.  Resp. 2. On March 11, 2014, Petitioner filed his application for asylum, and the Immigration Judge scheduled a hearing on the merits of his application for asylum, withholding of removal, and relief under CAT on May 21, 2014.  Resp. 2.  This merits hearing was moved to June 11, 2014, when Petitioner requested that his case be consolidated with the case of his nephew, who was also a witness to the murder of Petitioner's brother.  Resp. 2; Pet. 2-3.

The Immigration Judge conducted Petitioner's merits hearing in three parts—on June 11, June 27, and July, 30, 2014—due to the busy court schedule.  Mem. 9; Reply 9 n.6.  On September 4, 2014, the Immigration Judge denied Petitioner's request for asylum and other relief.  Pet. 4.  On September 25, 2014, Petitioner appealed the Immigration Judge's decision to the Board of Immigration Appeals ("BIA").  Pet. 4-5.  The deadline for briefs was November 21, 2014.  Resp. 2.  Petitioner requested an extension of the briefing deadline, which was granted, extending the deadline to December 12, 2014.  Resp. 2.  On February 10, 2015, the BIA

2

remanded the case to the immigration court, finding that "the Immigration Judge did not adequately consider" certain facts and did not "address whether [Petitioner's] persecutors (the Chihuahua state police) are 'a government' or 'government-sponsored.'"  Resp. 2; BIA Opinion, ECF No. 4-2 at 13.

On March 19 and April 15, 2015, the Immigration Judge held additional hearings, and the parties filed briefs on the issues remanded by the BIA.  Resp. 3.  On June 2, 2015, the Immigration Judge again denied Petitioner's request for asylum and other relief.  Pet. 5.  On July 2, 2015, Petitioner appealed this decision to the BIA.  Pet. 5.  The deadline for the briefs for this appeal was August 24, 2015.  Resp. 3.

Since being placed in ICE custody on October 12, 2013, Petitioner has submitted written requests for parole seeking his release from custody pending removal proceedings on three separate occasions: November 15, 2013; June 16, 2015; and July, 22, 2015.  Pet. 3-4.  Each time, Petitioner's request for parole was denied.  Pet. 4.  During the time that Petitioner has been detained, he has not received a bond hearing.  Mem. 15.

On July 28, 2015, Petitioner filed the instant Petition, naming Adrian P. Macias, ICE Field Director; Loretta E. Lynch, United States Attorney General; Jeh Johnson, Secretary of United States Department of Homeland Security; Sarah Saldana, Director of United States Immigration and Customs Enforcement; and Don Franklin, Warden of the West Texas Detention Facility, as Respondents.  *See* Petition, ECF No. 1.  On July 31, 2015, he filed a Memorandum in Support of his Petition for Writ of Habeas Corpus ("Memorandum"), ECF No. 3.  On July 29, 2015, the Court ordered Respondents to show cause why the petition should not be granted.  *See* Order, ECF No. 2.  On September 11, Respondents filed their Response to Petitioner's Petition

3

for Writ of Habeas Corpus ("Response"), ECF No. 4, and, on September 25, 2015, Petitioner

filed his Reply in Support of his Filed Writ of Habeas Corpus ("Reply"), ECF No. 5.

Petitioner has been held in immigration detention from October 12, 2013 until this day—

more than twenty-six months.  *See* Pet. 2.

## II.     DISCUSSION

In addressing the Petition, the Court first considers whether it has jurisdiction to decide

Petitioner's claims.  Next, the Court considers the Government's argument that Adrian P.

Macias, ICE Field Director, is the only proper respondent.  Finally, the Court considers

Petitioner's claims regarding the legality of his continued detention.

### A.     Jurisdiction

In his Petition and Memorandum, Petitioner seeks habeas relief in the form of immediate

release from ICE custody.  Pet. 2, 18; Mem. 24.  Petitioner claims that his continued detention

violates the Fifth and Fourteenth Amendments to the Constitution of the United States.  Pet. 12.

Petitioner also claims that his detention violates the Immigration and Nationality Act.  Pet. 14.

In its Response, the Government argues that Petitioner's detention is authorized by statute and

that "[t]he constitutionality of detention during the pendency of removal proceedings has been

upheld by the Supreme Court."  Resp. 4, 7.

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power

authorized by Constitution and statute.'"  *Gunn v. Minton*, --- U.S. ----, 133 S.Ct. 1059, 1064

(2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Because

federal courts are "'duty-bound to examine the basis of subject matter jurisdiction sua sponte,'"

this Court must determine if it has jurisdiction to hear Petitioner's claims, even though the parties

have not raised the issue.  *See Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008) (quoting

*Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004)); *see also Gonzalez v. Thaler*, --- U.S. ----, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002))).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 693 (5th Cir. 1995) (explaining that a case must be dismissed if jurisdiction is lacking, because jurisdiction "is mandatory for the maintenance of an action in federal court").

Title 28 U.S.C. § 2241 grants this Court jurisdiction to hear habeas corpus petitions from aliens claiming they are held "in violation of the Constitution or laws or treaties of the United States."  *See* 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)).  However, in 2005, Congress passed the Real ID Act, which divests district courts of jurisdiction to hear petitions under § 2241 that attack final orders of removal.  *Rosales v. Bureau of Immigration and Customs Enf't*, 426 F.3d 733, 735-36 (5th Cir. 2005).  Under the Real ID Act, district courts must transfer pending § 2241 cases to the appropriate court of appeals, where they are converted to petitions for review of the removal order.  *Andrade v. Gonzales*, 459 F.3d 538, 542 (5th Cir. 2006) (citing *Rosales*, 426 F.3d at 736).

The Real ID Act "does not, however, preclude habeas review of challenges to detention that are independent of challenges to removal orders."  *Baez v. Bureau of Immigration and Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (citing H.R. Rep. No. 109-72, at 300 (2005)); *see also Geromino v. Mukasey*, 535 F. Supp. 2d 808, 811-12 (W.D. Tex. 2008) ("The

REAL ID Act, however, does not preclude a district court from exercising jurisdiction over constitutional claims or questions of law which do not challenge a final order of removal."). Thus, even after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself. *Baez*, 150 F. App'x at 312.

Even though this Court has jurisdiction to decide statutory and constitutional challenges to civil immigration detention, this Court does not have jurisdiction to review the discretionary decisions of the Attorney General. *Zadvydas*, 533 U.S. at 688 (citing 8 U.S.C. § 1252(a)(2)(B)(ii) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."); *see also Kambo v. Poppell*, No. SA-07-CV-800-XR, 2007 WL 3051601, at *6, *8 (finding that parole and bond determinations are discretionary decisions not subject to review).

Petitioner, who is currently held in ICE custody, first claims that his "continued detention is a violation of his constitutionally protected due process rights," as protected by the Fifth and Fourteenth Amendments to the United States Constitution. Pet. 12. Thus, Petitioner is not attacking the merits of a removal order, but is instead challenging the constitutionality of his detention pending the resolution of his removal proceedings. Pet. 12, 14. Because the constitutionality of Petitioner's detention can be adjudicated without touching on the merits of any final order of removal, jurisdiction of this claim is not precluded by the REAL ID Act. *See Baez*, 150 F. App'x at 312; *see also Reeves v. Johnson*, No. CIV.A. 15-1962 SRC, 2015 WL 1383942, at *1 (D.N.J. Mar. 24, 2015) ("28 U.S.C. § 2241(c)(3) provides jurisdiction for district

courts to grant a writ of habeas corpus if the petitioner is in custody in violation of the

Constitution, or laws or treaties of the United States."); *Kambo*, 2007 WL 3051601, at *9 (W.D.

Tex. Oct. 18, 2007) (explaining that the REAL ID act does not preclude habeas jurisdiction over

cases that do not involve review of an order of removal).  Therefore, the Court finds that it has

subject matter jurisdiction over Petitioner's first claim.

Secondly, Petitioner claims that his continued detention "violates the [Immigration and

Nationality Act] and its implementing regulations."  Pet. 14.  Petitioner explains that the law and

regulations "impose a presumption in favor of parole if an arriving alien demonstrates that he or

she has a credible fear of persecution, that they are not a flight risk, and that they are not a danger

to the community."  Pet. 15, ¶ 52.  Petitioner asserts that he meets the criteria for this

presumption and that he should, likewise, be granted parole.  Pet. 15.  However, the granting of

parole is clearly a discretionary decision under the statute.  8 U.S.C. § 1182(d)(5)(A) ("The

Attorney General may . . . in his discretion parole into the United States temporarily under such

conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or

significant public benefit any alien applying for admission to the United States . . . .").  Petitioner

seems to recognize as much when he states that the decision to continue to detain Petitioner is

"an abuse of discretion."  Mem. 23.  Because Petitioner's second claim involves a discretionary

decision by the Attorney General, this Court is divested of jurisdiction to resolve that challenge.

*See Loa-Herrera v. Trominski*, 231 F.3d 984, 990-91 (5th Cir. 2000) ("Congress, however, has

denied the district court jurisdiction to adjudicate deprivations of the plaintiffs' statutory and

constitutional rights to parole."); *see also Medina v. Dep't Homeland Sec.*, No. 13-CV-2989,

2014 WL 897804, at *2 (W.D. La. Mar. 6, 2014) ("[T]his Court has no jurisdiction to review the

Attorney General's discretionary judgment regarding his application of the release and bond

provisions of § 1226(a) as to Petitioner."); *Kambo*, 2007 WL 3051601, at *8 (explaining that "the Attorney General's discretionary judgment regarding the application of release and bond provisions . . . is not subject to review").  Under § 1252(a)(2)(B)(ii), this Court has no jurisdiction to review the Attorney General's discretionary decision not to apply the presumption and the resulting denial of parole.  *See Loa-Herrera*, 231 F.3d at 990-91; *Medina*, 2014 WL 897804, at *2; *Kambo*, 2007 WL 3051601, at *6, *8.  Thus, the Court finds that it does not have jurisdiction over Petitioner's second claim.  Accordingly, the Court only considers only Petitioner's constitutional challenge to his ongoing detention.

### B.    Proper Respondent

In its Response, the Government argues that Adrian P. Macias is the only proper respondent because he is in charge of the detention facility where Petitioner is detained and states that "[a]ll other named Respondents should be dismissed."  Resp. 4.  However, the Government does not argue that Petitioner has failed to name any proper respondent or that this Court's jurisdiction is in any way affected by Petitioner naming additional, allegedly improper respondents.  *See generally* Resp.

In his Reply, Petitioner argues that all the named Respondents are proper Respondents. Reply 6.  Petitioner explains that Macias was in charge of the detention facility where Petitioner was previously held, but that on June 4, 2015, Petitioner was transferred to a privately-owned facility.  Reply 7.  Petitioner explains that Warden Don Franklin is in charge of that privately-owned facility.  Reply 7.

The Supreme Court has stated that "the default rule" in habeas petitions "is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."  *Rumsfeld v. Padilla*, 542 U.S. 426, 435

(2004).  In this case, the facts presented by the parties do not clearly indicate whether Adrian P. Macias or Warden Don Franklin is the warden of the facility where Petitioner is being held.  *See* Resp. 4; Reply 7.  Therefore, either Adrian P. Macias or Warden Don Franklin—whoever currently has custody of Petitioner—is the proper respondent.  However, it is clear that Loretta E. Lynch, United States Attorney General; Jeh Johnson, Secretary of United States Department of Homeland Security; and Sarah Saldana, Director of United States Immigration and Customs Enforcement are not proper respondents under the rule laid out by the Supreme Court in *Padilla*, because they are "remote supervisory official[s]."  542 U.S. at 435 (explaining that the proper respondent in a habeas petition is "not the Attorney General or some other remote supervisory official").  Therefore, the Court **GRANTS** the Government's request to dismiss as to Respondents Loretta E. Lynch, United States Attorney General; Jeh Johnson, Secretary of United States Department of Homeland Security; and Sarah Saldana, Director of United States Immigration and Customs Enforcement.  The Court **DENIES** the Government's request to dismiss as to Respondent Warden Don Franklin, Warden of the West Texas Detention Facility, because either Adrian P. Macias or Warden Don Franklin is the proper respondent.

### C.     Petitioner's Challenge to Detention

Petitioner argues that his detention violates due process and "the [Immigration and Nationality Act] and its implementing regulations."  Pet. 12, 14.  Although Petitioner does not clearly state whether he is arguing that his detention violates substantive due process or procedural due process, it appears that he is alleging substantive due process violations because his arguments focus on the length of his detention, not procedural protections that he was denied.  *See* Pet. ¶ 42 ("This detention vastly exceeds the six-month limitation." (citing *Zadvydas*, 533 U.S. at 699-701)).  Indeed, Petitioner only once mentions that the Government has failed to

9

provide him with a hearing to determine if custody is appropriate, and, in so mentioning, indicates that "there is no justification for this failure in according substantive due process." *See* Mem. 15 ("Furthermore, Mr. Chavez has been denied the bare minimum of due process in that he has never been granted an individualized bond hearing . . . ."). Thus, the Court proceeds to analyze Petitioner's claim as one involving substantive due process.

In response to Petitioner's arguments that his detention violates substantive due process and the Immigration and Nationality Act, the Government argues that the Attorney General has statutory authority to detain Petitioner during the pendency of his removal proceedings. Resp. 4. The Government asserts that the Attorney General properly exercised its discretion in deciding to detain Petitioner, explaining that the Attorney General decided to continue to detain Petitioner, even after his request for humanitarian parole, upon "due consideration of Petitioner's immigration file and the status of his removal proceedings." Resp. 4-5.

"Substantive due process analysis must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (internal quotation marks omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Lousiana*, 504 U.S. 71, 80 (1992)). In order to determine Petitioner's liberty interest, however, the Court first determines Petitioner's legal status in the United States as well as the statutory and regulatory framework that authorizes Petitioner's detention. The Court then considers the current Supreme Court precedent regarding civil detention of aliens to determine whether the detention of Petitioner for over twenty-six months is constitutional.

10

> **1.      Petitioner is being detained as an arriving alien pursuant to 8 U.S.C. § 1225(b)(2)(A)**

Both parties agree that Petitioner is properly classified as an "arriving alien" under the immigration statutes.  Pet. 11; Resp. 4.  "The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry . . . ."  8 C.F.R. § 1001.1(q).  Arriving aliens are inspected immediately upon arrival in the United States and, unless "'clearly and beyond a doubt entitled to be admitted,'" are placed in "removal proceedings to determine admissibility."  *Clark v. Martinez*, 543 U.S. 371, 373 (2005) (quoting 8 U.S.C. § 1225(b)(2)(A)).

According to the statute, arriving aliens are subject to expedited removal and are not entitled to a hearing or appeal on this decision.  8 C.F.R. § 1235.3(b)(1)(i), (b)(2)(ii).  Generally, aliens subject to expedited removal are to be removed immediately, but arriving aliens who express an intention to apply for asylum or a fear of persecution are referred to an asylum officer for a credible fear interview.  8 U.S.C. § 1225(b)(1)(A)(ii), (b)(1)(B)(i).  If the alien is found to have a "credible fear of persecution," the alien remains detained, subject to the parole provisions for arriving aliens mentioned above, pending consideration of the asylum application.  8 U.S.C. § 1225(b)(1)(B)(ii) ("If the [asylum] officer determines at the time of the interview that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum."); 8 U.S.C. § 1182(d)(5)(A) (explaining that the Attorney General may grant parole "for urgent humanitarian reasons or significant public benefit").  Upon a positive credible fear determination, an alien is placed in section 240 removal proceedings,[1] rather than

---

[1] "Section 240 removal proceedings" are removal proceedings conducted by an immigration judge.  *See* 8 U.S.C § 1229a(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien.").  "Section 240" refers to § 240 of the Immigration and Nationality Act, which is codified in 8 U.S.C. § 1229.

the expedited removal proceedings described above, for a determination of the asylum claim.
*See* 8 C.F.R. § 1235.6(a)(1)(ii); *see also* 8 C.F.R. § 1208.30(g)(2)(iv)(B) (explaining that, when a
negative credible fear finding by an asylum officer is reversed by an immigration judge, the
Government, "may commence removal proceedings under section 240 of the Act, during which
time the alien may file an application for asylum and withholding of removal"); *In Re X-K-*, 23 I.
& N. Dec. 731, 734 (BIA 2005) ("The requirement that aliens who had initially been screened
for expedited removal be placed in full section 240 removal proceedings after a final positive
credible fear determination is clearly stated in the regulations.").

    Pursuant to 8 U.S.C. § 1225(b)(2)(A), arriving aliens—including those with a positive
credible fear determination—are to be detained unless one of the limited statutory exceptions
applies, allowing the Government to release the alien on parole. *Rodriguez v. Robbins*, 715 F.3d
1127, 1132 (9th Cir. 2013) ("*Rodriguez I*") ("Although Section 1225(b) generally mandates the
detention of aliens seeking admission pending their removal proceedings, individuals detained
under the statute may be eligible for discretionary parole from ICE custody."); *see also* 8 U.S.C.
§ 1225(b)(2)(A) ("[I]n the case of an alien who is an applicant for admission, if the examining
immigration officer determines that an alien seeking admission is not clearly and beyond a doubt
entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this
title."); 8 C.F.R. § 1235.3(c) ("Except as otherwise provided in this chapter, any arriving alien
who appears to the inspecting officer to be inadmissible, and who is placed in removal
proceedings pursuant to section 240 of the Act shall be detained in accordance with section
235(b) of the Act."); *Clark*, 543 U.S. at 373 (explaining that the detention of an "alien arriving in
the United States" is "subject to the Secretary's discretionary authority to parole him into the
country"). The Attorney General can temporarily parole an alien who is applying for admission

to the United States "for urgent humanitarian reasons or significant public benefit," "to meet a medical emergency[,] or . . . for a legitimate law enforcement objective." 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 1235.3(b)(2)(iii). Whether the Government decides to parole an arriving alien or keep him detained, the regulations state that an immigration judge does not have authority to review the custody determination. 8 C.F.R. § 1003.19(h)(2)(i)(B) ("[A]n immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following classes of aliens: . . . (B) Arriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act . . . ."); *see also In Re X-K-*, 23 I. & N. Dec. at 732 ("There is no question that Immigration Judges lack [custody] jurisdiction over arriving aliens who have been placed in section 240 removal proceedings, because they are specifically listed at 8 C.F.R. § 1003.19(h)(2)(i)(B) as one of the excluded categories."). Thus, unless an arriving alien asylum applicant is granted parole, he will remain in detention pending the grant or denial of his asylum application. *See* 8 U.S.C. § 1225(b)(2)(A).

As stated above, the parties agree that Petitioner is an arriving alien, and the Court finds this to be accurate, as Petitioner applied for admission to the United States at a port-of-entry. *See* 8 C.F.R. § 1001.1(q). As such, Petitioner is currently detained pursuant to 8 U.S.C. § 1225(b)(2)(A). *See Rodriguez I*, 715 F.3d at 1132.

## 2. Arriving aliens are entitled to some amount of due process

Having determined that Petitioner is an arriving alien detained pursuant to § 1225(b)(2)(A), the Court must decide the amount of due process, if any, to which arriving aliens are entitled. Petitioner is an arriving alien whom the Government has determined is inadmissible ("inadmissible alien"). Resp. 1; *see also* 8 U.S.C. § 1182(a)(7)(A)(i)(I) (explaining that an immigrant not in possession of a valid entry document at the time of application for

13

admission is inadmissible).  The Supreme Court has stated that inadmissible aliens are not

afforded the same breadth of rights as citizens or as aliens who are already present in the United

States.  *See Zadvydas*, 533 U.S. at 693.  In *Zadvydas*, the Court explained:

> The distinction between an alien who has effected an entry into the United States and one
> who has never entered runs throughout immigration law.  It is well established that
> certain constitutional protections available to persons inside the United States are
> unavailable to aliens outside of our geographic borders.  But once an alien enters the
> country, the legal circumstance changes, for the Due Process Clause applies to all
> "persons" within the United States, including aliens, whether their presence here is
> lawful, unlawful, temporary, or permanent.

*Id*.  *Cf*.  *Demore v. Kim*, 538 U.S. 510, 547 (2003) (Souter, J., dissenting) ("The statement that
'[i]n the exercise of its broad power over naturalization and immigration, Congress regularly
makes rules that would be unacceptable if applied to citizens,' cannot be read to leave limitations
on the liberty of aliens unreviewable.").

However, inadmissible aliens seeking entry, such as Petitioner, are subject to the "entry fiction."

*See Zadvydas*, 533 U.S. at 693.  Under the "entry fiction" aliens who have been denied

admission to the United States yet are present within its borders are "treated, for constitutional

purposes, as if stopped at the border," and are thus not entitled to the full range of constitutional

protections to which citizens and aliens who have been admitted are entitled.  *Id.* (quotation

marks omitted).

Although inadmissible aliens are not entitled to the full protection of the Constitution, the

Supreme Court has also made clear that "the Fifth Amendment entitles aliens to due process of

law in deportation proceedings."  *Demore*, 538 U.S. at 523 (quotation marks omitted).  However,

the Supreme Court has explained that this entitlement to due process is somewhat limited, stating

that "when the Government deals with deportable aliens, the Due Process Clause does not

require it to employ the least burdensome means to accomplish its goal."  *Id.* at 528.

Additionally, the Supreme Court has made clear that inadmissible aliens are entitled to less due

process than are resident aliens.  *Id.* at 547 (O'Connor, J., concurring) ("[L]egal permanent

14

residents ("LPRs") are entitled to claim greater procedural protections under [the Due Process Clause] than aliens seeking initial entry.").  So although Petitioner is entitled to some modicum of due process as an inadmissible alien seeking entry, he may not be entitled to the same level of due process as afforded to the resident aliens in *Demore* and *Zadvydas*.

In *Zadvydas*, the Court found that indefinite post-removal-period detention was unconstitutional for "aliens who were admitted to the United States but subsequently ordered removed," explaining that "[a]liens who have not yet gained initial admission to this country would present a very different question."  533 U.S. at 682.  In *Clark*, the Supreme Court extended the application of *Zadvydas* to inadmissible aliens but did not address the constitutional issue, instead deciding the case based on statutory interpretation.  *Clark*, 543 U.S. at 378 (holding that the statute applies to both inadmissible and removable aliens and cannot be interpreted to apply to differently to these different categories of aliens).

However, at least one circuit—the Sixth Circuit—has held that the indefinite detention of inadmissible aliens raised the same constitutional concerns as did the indefinite detention of the removable resident aliens in *Zadvydas*.  *Rosales-Garcia v. Holland*, 322 F.3d 386, 412 (6th Cir. 2003) (en banc).  In *Rosales-Garcia*, the Sixth Circuit explained that "the *Zadvydas* Court left open the question whether the indefinite detention of excludable[2] aliens raises the same constitutional concerns . . . as the indefinite detention of aliens who have entered the United States."  *Id.*  The Sixth Circuit held that aliens, whether inadmissible or deportable, are entitled to substantive due process:

---

[2] "Before the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), aliens ineligible to enter the country were denominated 'excludable' and ordered 'deported.'  Post–IIRIRA, such aliens are said to be 'inadmissible' and held to be 'removable.'"  *Clark v. Martinez*, 543 U.S. 371, 376 n.2 (2005).

> If excludable aliens were not protected by even the substantive component of
> constitutional due process, as the government appears to argue, we do not see why the
> United States government could not torture or summarily execute them. Because we do
> not believe that our Constitution could permit persons living in the United States—
> whether they can be admitted for permanent residence or not—to be subjected to *any*
> government action without limit, we conclude that government treatment of excludable
> aliens *must* implicate the Due Process Clause of the Fifth Amendment.

*Id.*

In looking at post-removal-period detention, specifically, the Sixth Circuit concluded that the

same constitutional concerns did arise in regard to inadmissible aliens and, consequently,

extended the holding of *Zadvydas* to inadmissible aliens.  *Id.*  408-10 (explaining that, in addition

to relying on statutory construction to extend the holding of *Zadvydas* to inadmissible aliens,

"constitutional concerns would independently compel us to construe [the statute's] post-removal-

period detention provision to contain a reasonableness limitation for excludable aliens").

Thus, the question remains open as to what extent the constitutional dimensions of

*Zadvydas* apply to inadmissible aliens.  Even so, it is clear that aliens—even inadmissible

aliens—are entitled to some constitutional protections, including some amount of due process.

*See Zadvydas*, 533 U.S. at 693; *Demore*, 538 U.S. at 523; *see also Rosales-Garcia*, 322 F.3d at

410 n.29 ("[N]o circuit has concluded that the Due Process Clauses of the Fifth and Fourteenth

Amendments do not apply to excludable aliens."); *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 396 (3d

Cir. 1999), *amended* (Dec. 30, 1999) ("Even an excludable alien is a 'person' for purposes of the

Fifth Amendment and is thus entitled to substantive due process."); *see also Lynch v. Cannatella*,

810 F.2d 1363, 1374 (5th Cir. 1987) ("[W]hatever due process rights excludable aliens may be

denied by virtue of their status, they are entitled under the due process clauses of the fifth and

fourteenth amendments to be free of gross physical abuse at the hands of state or federal

officials.").

16

### 3.    *Zadvydas* prohibits indefinite detention of aliens

Having determined that Petitioner, even as an inadmissible alien, is entitled to some due process, the Court turns to the merits of Petitioner's constitutional claim.  In support of his constitutional claim, Petitioner argues that the Supreme Court in *Zadvydas* "imposed a six-month limit on what may be considered a 'reasonable' period of detention to ensure that an alien is available for pending immigration proceedings."  Mem. 12-13; Pet. 12 (citing *Zadvydas* in arguing that his current detention "vastly exceeds the six-month limitation").  The Government argues that *Zadvydas* only applies to detention after a final order of removal has been entered, and therefore does not apply to Petitioner because he is still in removal proceedings.  Resp. 5.

In *Zadvydas*, the Supreme Court of the United States considered substantive due process limitations on the civil detention of aliens.  *See generally* 533 U.S. 678.  In *Zadvydas*, the petitioners—two resident aliens who had been convicted of crimes—were detained under § 1231 after receiving final orders of removal.  *Id.* at 684-86.  Because the petitioners did not have citizenship in any country, neither could be deported; instead, the Government continued to detain them past the statutory ninety-day removal period.  *Id.*  The petitioners each filed a petition for writ of habeas corpus under § 2241 claiming that their indefinite detention violated due process.  *Id.*

The Supreme Court noted that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem."  *Id.* at 690.  Because the statute's primary purpose for detaining aliens was to ensure an alien's presence for removal, the *Zadvydas* Court construed § 1231 to allow detention of post-removal aliens only for "a period reasonably necessary to bring about [an] alien's removal from the United States."  *Id.* at 689.  The Supreme Court "construe[d] the statute to contain an implicit 'reasonable time' limitation, the application of which is subject

17

to federal-court review" and held that six months was a presumptively reasonable detention period. *Id.* at 682, 701. After this six month period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* Several years later, the Supreme Court extended *Zadvydas* to find that inadmissible aliens held in post-removal detention are also entitled to this type of individualized review once their detention exceeds six months. *See generally Clark*, 543 U.S. 371.

Turning to the instant case, as the Government points out, Petitioner is detained during the pendency of his removal proceedings, while the aliens in *Zadvydas* were detained after receiving a final order of removal. *See* Resp. 5; *see also Zadvydas* 533 U.S. at 684-86. Thus, Petitioner is detained pursuant to § 1225(b)(2)(A), while the aliens in *Zadvydas* were detained pursuant to § 1231. *See Rodriguez I*, 715 F.3d at 1132; *Zadvydas* 533 U.S. at 684-86. As a result, while the *Zadvydas* Court did impose a six-month presumptively reasonable time limit on civil detention of aliens in that case, the Court did not indicate that this presumption would apply outside the context of § 1231 detention. *See Zadvydas*, 533 U.S. at 701 (looking to Congressional intent regarding § 1231 to determine that "Congress previously doubted the constitutionality of detention for more than six months"). Thus, the six-month limit set out in *Zadvydas* is not clearly applicable to all civil immigration detention, or to § 1225(b)(2)(A) detention, as the Petitioner suggests.[3] However, the *Zadvydas* Court did clearly state that, "[a]

---

[3] Another difference between the aliens in *Zadvydas* and Petitioner is that the aliens in *Zadvydas* were not eligible for any type of relief from removal; as stated earlier, the *Zadvydas* aliens were subject to final orders of removal. *See Zadvydas*, 533 U.S. at 684-86. Petitioner, on the other hand, might still have a successful asylum claim, as his case is pending before the BIA. *See* Pet. 5. As the Ninth Circuit has noted, aliens who still have a possibility of relief from removal, such as asylum, are even more deserving of constitutional protection than the aliens in *Zadvydas* who were definitely removable. *See Rodriguez I*, 715 F.3d at 1139 (arguing that "if anything it would appear that the [resident aliens] who fall within § 1225(b)'s purview should enjoy *greater* constitutional protections

statute permitting indefinite detention of an alien would raise a serious constitutional problem,"

without limiting this statement to detention pursuant to § 1231.  *See* 533 U.S. at 690.

### 4. *Demore* condones only *brief* mandatory detention during pending removal proceedings

Subsequent to *Zadvydas*, in *Demore v. Kim*, the Supreme Court considered the

constitutionality of mandatory detention pending the resolution of removal proceedings under §

1226(c), a statute that provides for mandatory detention of aliens who have been "convicted of

one of a specified set of crimes."  *See Demore*, 538 U.S. at 513.  Like aliens detained pursuant to

§ 1225(b)(2)(A), aliens detained pursuant to § 1226(c) are not entitled to an individualized bond

hearing to determine if their detention is appropriate under their circumstances.  *See id.* at 514.

In *Demore*, the respondent—a resident alien—was undergoing removal proceedings and

had not been issued a final order of removal.  *Id.* at 513.  Because the respondent had been

convicted of crimes, he was subject to mandatory pre-removal detention without an

individualized determination that "he posed either a danger to society or a flight risk."  *Id.* at

513-14.  The Supreme Court found that "Congress, justifiably concerned that deportable criminal

aliens who are not detained continue to engage in crime and fail to appear for their removal

hearings in large numbers, may require that persons such as respondent be detained for the brief

---

than criminal aliens who have already failed to win relief in their removal proceedings").  Yet, despite the fact that the aliens in *Zadvydas* were not eligible for any relief from removal, the Court found that they could not be held indefinitely without some individualized determination that continued detention was appropriate.  *See Zadvydas*, 533 U.S. at 692.

Further, is it noteworthy that an arriving alien who has no possible relief from removal could be released from detention much more quickly than an arriving alien with a successful asylum claim.  An arriving alien who was clearly ineligible for any sort of relief from removal could undergo expedited removal and quickly enter the post-removal-order period of detention.  Under *Zadvydas*, after the expiration of six months in the post-removal-order period, this person would receive an individualized determination regarding the appropriateness of continued detention and could, depending on the result of this determination, be released, despite that alien's ineligibility for any type of relief from removal.  *See id.* at 701.  Petitioner, on the other hand, has a potentially successful asylum claim, yet has not received any individualized determination during his twenty-six month detention.  Mem. 15.

period necessary for their removal proceeding." *Id.* at 513.  In distinguishing the case from *Zadvydas*, the Court noted that the mandatory detention at issue occurred prior to the issuance of a final order of removal. *Id.* at 527-28.  Therefore, unlike the detention in *Zadvydas*, the detention in *Demore* was still closely related to the purpose of ensuring the alien's availability for removal. *Id.* at 528.

Additionally, the Court distinguished the case from *Zadvydas* explaining that the detention was "of a much shorter duration" than the indefinite and potentially permanent detention in *Zadvydas*. *Id.*  Indeed, the *Demore* Court repeatedly referenced the limited period of time most aliens were detained pending removal proceedings. *Id.* at 513, 523, 526, 528, 529 n.12.  The Court explicitly found that detention under § 1226(c) "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which an alien chooses to appeal." *Id*. at 530.  Thus, the Court found that mandatory detention of aliens under § 1226(c) did not violate the Constitution. *Id.* at 531.

In his concurrence, Justice Kennedy also commented that longer terms of detention might become an issue, explaining that:

> Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.

*Id.* at 532-33 (Kennedy, J., concurring).

Justice Kennedy's concurrence echoes the majority's concern that while brief detention of aliens under § 1226(c) was constitutional, longer detention might not be. *Id.* at 530, 532-33.  Thus, while brief detention is acceptable under *Demore*, 538 U.S. at 513, the constitutionality of much longer mandatory detention may well present a problem. *See Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 232 (3d Cir. 2011) (explaining that § 1226(c) requires mandatory detention without a

20

bond hearing and stating that "the constitutionality of this practice is a function of the length of the detention"); *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) (finding that the detention of an alien under § 1226(c) for two years and eight months was "constitutionally doubtful"); *Shokeh v. Thompson*, 369 F.3d 865, 872 (5th Cir.) ("*Shokeh I*") (explaining that "[t]he *Zadvydas* Court was troubled by the "potentially permanent" nature of the detention," and that the *Demore* Court upheld the civil detention, "in part, because of the 'very limited time of the detention at stake'" (citing *Zadvydas*, 533 U.S. at 690; *Demore*, 538 U.S. at 510)), *vacated*, 375 F.3d 351 (5th Cir. 2004) ("*Shokeh II*"); *Ly v. Hansen*, 351 F.3d 263, 267-68 (6th Cir. 2003) (explaining that *Zadvydas* "made clear that *limited* civil detention, without bond, is constitutional as applied to deportable aliens" but that longer civil detention required a "strong special justification").

Indeed, the *Demore* Court relied heavily on the brevity of the alien's detention even when defining the alien's claim, repeatedly framing the issue as one involving the alien's detention for the "limited" or "brief" period of his removal proceedings. *Demore*, 538 U.S. at 510, 513, 523, 526, 531 ("The INS detention of respondent, a criminal alien who has conceded that he is deportable, for the *limited* period of his removal proceedings, is governed by these cases." (emphasis added)). As noted earlier, the *Demore* Court also relied on brevity in distinguishing the case from *Zadvydas*. *Id.* at 528 ("While the period of detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent,' the detention here is of a much shorter duration." (citations omitted)). Ultimately, the *Demore* Court tied its holding to this brevity: "We hold that Congress . . . may require that persons such as respondent be detained for the *brief* period necessary for their removal proceedings." *Id.* at 513 (emphasis added).

Because the *Demore* Court focused on the brevity of the mandatory detention in finding that such detention was constitutional, *id.* at 513, 531, a number of courts have subsequently held

21

that mandatory detention pursuant to § 1226(c) is subject to a reasonable time limitation.  *See, e.g.*, *Diop*, 656 F.3d at 235 (reading a reasonableness limitation into § 1226(c) and finding that a nearly three-year detention under § 1226(c) was unreasonable, and therefore, unconstitutional); *Ly*, 351 F.3d at 273 (reading a reasonableness limitation into § 1226(c) and finding that detention for one and half years under § 1226(c) was unreasonable); *Uritsky v. Ridge*, 286 F. Supp. 2d 842, 846-47 (E.D. Mich. 2003) (reading a reasonableness limitation into § 1226(c) and finding that eleven to twelve month detention under § 1226(c) was unreasonable); *Reid v. Donelan*, 991 F. Supp. 2d 275, 277 (D. Mass. 2014) (reading a reasonableness limitation into § 1226(c) and finding that detention over six months is presumptively unreasonable).

By reading a reasonableness limitation into mandatory detention pursuant to § 1226(c), several courts have found that when detention pursuant to § 1226(c) is not brief, the alien should be granted habeas relief in the form of a bond hearing or release from detention.  *See Diop*, 656 F.3d at 231 (applying the canon of constitutional avoidance to hold that § 1226(c) does not authorize prolonged detention without a bond hearing, but that it only "authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary"); *Ly*, 351 F.3d at 268 ("Therefore, we hold that the INS may detain *prima facie* removable aliens for a time reasonably required to complete removal proceedings in a timely manner. If the process takes an unreasonably long time, the detainee may seek relief in habeas proceedings."); *Tijani*, 430 F.3d at 1242 (applying the canon of constitutional avoidance to hold that § 1226(c) only applies to expedited removal of criminal aliens and granting the petitioner release or a bond hearing upon finding that "[t]wo years and eight months of process is not expeditious"); *Rodriguez I*, 715 F.3d at 1138 ("Despite the Supreme Court's holding that mandatory detention under § 1226(c) without an individualized

22

determination of dangerousness or flight risk is constitutional under some circumstances, our subsequent decisions applying *Demore* make clear that *Demore*'s reach is limited to relatively brief periods of detention."); *Reid*, 991 F. Supp. 2d at 276 ("Because detention pursuant to § 1226(c) for over six months is presumptively unreasonable, the court will grant Plaintiff's Petition for Habeas Corpus . . . ."); *Ramirez v. Watkins*, No. CIV.A. B:10-126, 2010 WL 6269226, at *1 (S.D. Tex. Nov. 3, 2010) (finding an "implicit statutory reasonableness requirement contained in § 1226(c)" and holding that a detention of almost nineteen months violated that requirement); *Bourguignon v. MacDonald*, 667 F. Supp. 2d 175, 182 (D. Mass. 2009) ("In sum, the clear import of the *Demore* decision is not that an alien can be detained indefinitely under § 1226(c) while deportation proceedings are pending, without the right to a bond hearing, but merely that an alien can be detained without a hearing so long as the detention is reasonable, by which the Court meant (among other things perhaps) of limited duration.").

In addition, at least one panel of judges of the Fifth Circuit viewed *Zadvydas* and *Demore* as allowing brief mandatory detention while, at the same time, doubting the constitutionality of longer detention. *Shokeh I*, 369 F.3d at 872. In *Shokeh I*, an alien remained in detention pursuant to § 1231 solely because he was unable to afford bond. *Id.* The Fifth Circuit remanded the case to the District Court to determine if the amount of bond was reasonable, explaining that the *Zadvydas* Court's concern over indefinite detention "is not ameliorated by release conditional on bond that the immigrant is unable to pay." *Id.* at 872-73. The Fifth Circuit stated that the duration of the detention was essential to the Court's holdings in *Demore* and *Zadvydas*, explaining:

> The *Zadvydas* Court was troubled by the "potentially permanent" nature of the detention . . . . The Supreme Court again emphasized the importance of the duration of detention in *Demore v. Kim.* In *Kim* the Court upheld mandatory detention during removal

proceedings of immigrants previously convicted of certain criminal offences, in part, because of the 'very limited time of the detention at stake under [the challenged statute].' *Id.* at 872.

Although *Shokeh I* was later vacated, it was vacated because the Government had released the alien without bond before the Fifth Circuit's opinion was filed, rendering the case moot. *Shokeh II*, 375 F.3d at 351. Thus, the reasoning of *Shokeh I* is still persuasive, even if the case is no longer precedential. In *Shokeh I*, although the Fifth Circuit did not clearly state that mandatory immigration detention is subject to a reasonableness limit, it expressed doubts as to the constitutionality of prolonged mandatory immigration detention. *Shokeh I*, 369 F.3d at 872.

> **5.    Detention under § 1225(b) is subject to a reasonable time limitation**

In addition to reasonableness limitations on § 1226(c) detention, courts have also read reasonableness limitations into other immigration detention statutes, including mandatory detention of aliens pursuant to § 1225(b)(2)(A), to which Petitioner is subject. *See Rodriguez v. Robbins*, 804 F.3d 1060, 1078-85 (9th Cir. 2015) ("*Rodriguez II*") (reading a reasonableness limitation into detention pursuant to §§ 1225(b)(2)(A), 1226(a), and 1226(c) and requiring bond hearings after six months of detention under these statutes). *See also Rosales-Garcia*, 322 F.3d at 415 (reading a reasonableness limitation into § 1231 detention as it applies to inadmissible aliens); *Kasneci v. Dir., Bureau of Immigration & Customs Enf't*, No. 12-12349, 2012 WL 3639112, at *5 (E.D. Mich. Aug. 23, 2012) (reading a reasonableness limitation into § 1225(b)(2)(A) detention); *Bautista v. Sabol*, 862 F. Supp. 2d 375, 377 (M.D. Pa. 2012) (reading a reasonableness limitation into § 1225(b)(2)(A) detention); *Lakhani v. O'Leary*, No. 1:08 CV 2355, 2010 WL 3239013, at *9 (N.D. Ohio Aug. 16, 2010) (reading a reasonableness limitation into § 1226(a) detention), *vacated*, No. 1:08 CV 2355, 2010 WL 3730157 (N.D. Ohio

24

Sept. 17, 2010) (vacating the previous order because the alien was no longer being held pursuant to § 1226(a)).

The Ninth Circuit explained its decision to read reasonableness into several immigration detention statutes by comparing civil immigration detention with civil detention due to incompetency, stating that "the state may detain a criminal defendant found incapable of standing trial, but only for 'the reasonable period of time necessary to determine whether there is a substantial probability that he will attain [the] capacity [to stand trial] in the foreseeable future.'" *Rodriguez II*, 804 F.3d at 1075 (quoting *Jackson v. Indiana,* 406 U.S. 715, 738 (1972)).

This Court agrees with the circuit and district courts that have found that civil detention of aliens is subject to a reasonable time limitation.  *See, e.g.*, *Diop*, 656 F.3d at 235 ("We do not believe that Congress intended to authorize prolonged, unreasonable, detention without a bond hearing."); *Rosales-Garcia*, 322 F.3d at 415 (explaining that "constitutional concerns . . . compel us to construe IIRIRA's post-removal-period detention provision to contain a reasonableness limitation"); *Ly*, 351 F.3d at 270 (avoiding a constitutional problem by reading a reasonableness limitation into the period of mandatory detention allowed pursuant to § 1226(c)); *Uritsky*, 286 F. Supp. 2d at 846-47 (reading a reasonableness limit into § 1226(c)); *Reid*, 991 F. Supp. 2d at 277 (reading a reasonableness limitation into § 1226(c)); *Kasneci*, 2012 WL 3639112, at *5 (reading a reasonableness limitation into § 1225(b)(2)(A)); *Lakhani*, 2010 WL 3239013, at *9 (reading a reasonableness limitation into § 1226(a) and finding that the nearly two-year detention of an arriving alien during the pendency of his removal proceedings was unreasonable).  *See also Shokeh I*, 369 F.3d at 872 (stating that the *Demore* Court "upheld mandatory detention during removal proceedings of immigrants previously convicted of certain criminal offences, in part, because of the 'very limited time of the detention at stake under [the challenged statute].'" (citing

25

*Demore*, 538 U.S. at 510)).  Specifically, this Court finds, as does the Ninth Circuit, that the detention of aliens pursuant to § 1225(b)(2)(A) is subject to a reasonable time limitation.  *See Rodriguez II*, 804 F.3d at 1082.

A reasonable time limitation serves to alleviate the Supreme Court's concern in *Zadvydas* of overbreadth of detention.  The *Zadvydas* Court found that preventing danger to the community was not an adequate justification for indefinite detention of aliens under § 1231 where "the provision authorizing detention does not apply narrowly to a small segment of particularly dangerous criminals, say, suspected terrorists, but broadly to aliens ordered removed for many and various reasons, including tourist visa violations."  *Zadvydas*, 533 U.S. at 691.  This same reasoning applies to § 1225(b)(2)(A): under § 1225(b)(2)(A), the Government detains all arriving aliens pending removal proceedings, without regard to their danger to society or lack thereof or to the manner in which aliens were seeking to enter the United States—whether legal or illegal.[4] *See Rodriguez I*, 715 F.3d at 1132 (explaining that "Section 1225(b) generally mandates the detention of aliens seeking admission pending their removal proceedings").  Further, the reasoning of courts that have read *Zadvydas* and *Demore* together to apply reasonable time

---

[4] Pursuant to § 1225(b)(2)(A), aliens with no criminal history are placed in the same mandatory detention category, simply due to their arrival at a port of entry, as aliens who are detained due to their criminal acts; for example, certain resident aliens are considered arriving aliens due to illegal activity that they committed abroad and are detained pursuant to § 1225(b)(2)(A).  *See Rodriguez I*, 715 F.3d at 1142 (explaining that "an LPR who left the United States briefly to undertake illegal activity abroad, such as alien smuggling, would clearly be included in the 1225(b) subclass").  In addition, § 1225(b)(2)(A) serves to detain arriving aliens who have attempted to enter illegally, possibly fraudulently, as well as those who, like Petitioner, may have committed no immigration violations at all but have come to a port of entry seeking asylum—that is, admission into the United States by legal means.  *See* 8 C.F.R. § 1.2 (defining "arriving alien"); *see also, e.g.*, *Nadarajah v. Gonzales*, 443 F.3d 1069, 1073 (9th Cir. 2006) (explaining that an arriving alien who "obtained a passport and exit documents through a smuggler" was being detained under § 1225(b)); *Zubeda v. Elwood*, 265 F. Supp. 2d 509, 510 (E.D. Pa. 2003) (finding that an alien "who attempted to enter the United States with a false passport" was being detained pursuant to § 1225(b)(2)(A)).  Thus Petitioner, who is detained merely because he presented himself at the port of entry seeking legal admission to the United States is placed in the same category as aliens who attempted to enter illegally, overstayed visas, and committed crimes abroad.  *See Rodriguez I*, 715 F.3d at 1142; 8 C.F.R. § 1.2.

limitations to § 1226(c) detention applies even more clearly to § 1225(b)(2)(A) detention,

because—unlike § 1226(c) detention  which applies only to criminal aliens—detention pursuant

to § 1225(b)(2)(A) applies to both criminal and non-criminal aliens.  *See Demore*, 538 U.S. at

513; *Rodriguez I*, 715 F.3d at 1132.

One of the issues with placing Petitioner in the same category as aliens who have

committed crimes abroad and aliens who have entered illegally or violated the terms of their

visas, is that Petitioner—like all aliens detained under § 1225(b)(2)(A)—has no way of obtaining

an individualized review of his custody determination.  *See* 8 U.S.C. § 1225(b)(2)(A); 8 C.F.R.

§ 1003.19(h)(2)(i)(B).  Both the *Zadvydas* Court and the *Demore* Court explained that there are

two justifications for immigration detention—(1) ensuring the appearance of aliens at future

immigration proceedings, and (2) preventing danger to the community.  *Zadvydas*, 533 U.S. at

692; *Demore*, 538 U.S. at 513, 519.  Yet Petitioner has never had a hearing to determine if these

two justifications do, in fact, apply to his detention.  Mem. 15.

In finding that indefinite detention without review would invoke constitutional concerns,

the *Zadvydas* Court took into account not only the justifications for immigration detention, but

also looked to the lack of procedural protections for the aliens' right to be free from physical

restraint.  *See* 533 U.S. at 692.  In deciding to read a reasonableness limitation into the statute to

avoid a constitutional problem, the *Zadvydas* Court noted that administrative proceedings were

not sufficient to protect the aliens from the indefinite deprivation of liberty:

> [T]he sole procedural protections available to the alien are found in administrative
> proceedings, where the alien bears the burden of proving he is not dangerous, without (in
> the Government's view) significant later judicial review. This Court has suggested,
> however, that the Constitution may well preclude granting an administrative body the
> unreviewable authority to make determinations implicating fundamental rights. The
> Constitution demands greater procedural protection even for property. The serious
> constitutional problem arising out of a statute that, in these circumstances, permits an

indefinite, perhaps permanent, deprivation of human liberty without any such protection is obvious.

*Id*. (internal citations and quotation marks omitted).

In addition, the *Zadvydas* Court discussed the importance of procedural protections when explaining that civil detention based solely on dangerousness—"preventive detention"—had been upheld by the Court "only when limited to specially dangerous individuals and subject to strong procedural protections." *Id.* at 690-91.

The *Zadvydas* Court certainly saw this lack of individualized determination regarding the appropriateness of detention to be an issue, because the Supreme Court decided such a determination was necessary under § 1231. *Id*. at 701 (explaining that after the presumptively reasonable six-month period of post-removal-order detention, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing"). Likewise, although aliens detained pursuant to § 1226(c) do not have a mechanism for individualized review of the appropriateness of their detention, they are entitled to a hearing to determine if they are appropriately placed in the category of aliens subject to mandatory detention under § 1226(c). *See Demore*, 538 U.S. at 547 n.3 (explaining that a "'*Joseph* hearing' is immediately provided to a detainee who claims that he is not covered by § 1226(c)"). Further, detention authorized under *Demore* is necessarily "brief," as explained above, making an individualized review less important. *See Demore*, 538 U.S. at 513, 523, 526, 528, 529 n.12.

Yet, aliens detained under § 1225(b)(2)(A), such a Petitioner, have no such review process available to them. In fact, Petitioner does not currently have the benefit of any type of proceedings, much less the type of proceedings now required for those detained over six months under § 1231 or for those detained pursuant to § 1226(c). *See Zadvydas*, 533 U.S. at 692;

28

*Demore*, 538 U.S. at 547 n.3 (discussing "*Joseph* hearings"). Instead, Petitioner can now only request discretionary parole from the Attorney General. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 1003.19(h)(2)(i)(B). An Immigration Judge has no jurisdiction to review this decision, and there is no review process in the statute or regulations for denials of parole. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 1003.19(h)(2)(i)(B). Indeed, the Ninth Circuit has found this reliance on parole to protect the liberty interests of those detained under § 1225(b)(2)(A) to be insufficient:

> Because parole decisions under § 1182 are purely discretionary, they cannot be appealed to [Immigration Judges] or courts. This lack of review has proven especially problematic when immigration officers have denied parole based on blatant errors: In two separate cases identified by the petitioners, for example, officers apparently denied parole because they had confused Ethiopia with Somalia. And in a third case, an officer denied parole because he had mixed up two detainees' files.

*Rodriguez II*, 804 F.3d at 1081.

As a result, the Ninth Circuit held that "the mandatory provisions of § 1225(b) simply expire at six months, at which point the government's authority to detain the alien shifts to § 1226(a), which is discretionary and which we have already held requires a bond hearing." *Id.* at 1082 (internal quotation marks omitted).

The lack of an adequate process for reviewing decisions to detain aliens has also been central to other courts' decisions to grant habeas relief to aliens pending the determination of their removal proceedings. *See, e.g.*, *Diop*, 656 F.3d at 235 ("We do not believe that Congress intended to authorize prolonged, unreasonable, detention without a bond hearing."); *Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011) ("We hold that an alien facing prolonged detention under § 1231(a)(6) is entitled to a bond hearing before an immigration judge and is entitled to be released from detention unless the government establishes that the alien poses a risk of flight or a danger to the community."); *Lakhani*, 2010 WL 3239013, at *9 ("Even if

29

Petitioner were still being detained under § 1226(c), his detention without a bond hearing would not comply with procedural due process."); *Cuello v. Adduci*, No. 10-13641, 2010 WL 4226688, at *5 (E.D. Mich. Oct. 21, 2010) (granting habeas relief to an alien detained under § 1226(a) because he was never granted a bond hearing and finding that his "continued detention and lack of meaningful custody review does not comport with due process").

Likewise, some courts have relied on the availability of a bond hearing in denying habeas relief.  *See, e.g.*, *Contant v. Holder*, 352 F. App'x 692, 695 (3d Cir. 2009) ("To the extent [the alien] relies on [*Demore*] to contrast his lengthy detention with the average detention period for persons detained pursuant to § 1226(c), that comparison is inapposite. Unlike the mandatory detention statute at issue in *Kim,* § 1226(a) provides for individualized detention determinations."); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1068 (9th Cir. 2008) ("Prieto–Romero has not been denied procedural due process while in custody.  He received a bond hearing that afforded him an individualized determination of the government's interest in his continued detention by a neutral decisionmaker."); *Nepomuceno v. Holder*, No. CIV. 11-6825 WJM, 2012 WL 715266, at *4 (D.N.J. Mar. 5, 2012) (denying habeas petition "because Petitioner is not mandatorily detained pursuant to the exception set forth in § 1226(c), and because the Immigration Judge conducted two bond hearings in accordance with § 1226(a)"). Because aliens detained under § 1225(b)(2)(A) have no access to an individualized determination regarding whether they are properly placed in the § 1225(b)(2)(A) category or properly detained because they present a flight risk and a danger to the community, the Court finds that detention pursuant to § 1225(b)(2)(A) is subject to a reasonable time limitation.

**6.     Petitioner's detention is unreasonable**

Now that the Court has determined that § 1225(b)(2)(A) detention is subject to a reasonable time limitation, the Court must consider whether Petitioner's detention of more than twenty-six months is unreasonable.  Petitioner asserts that his detention is unreasonable because it has lasted longer than the six-month presumptive limit for immigration detention established by *Zadvydas*.  Pet. 41.  In response, the Government argues that *Zadvydas* does not apply to Petitioner's situation and that the Attorney General has the authority to detain Petitioner.  Resp. 4-5.

In addition, the Government argues that, "like the alien in *Demore*, the Petitioner significantly delayed his own removal proceedings by requesting numerous continuances and requesting an extension of the briefing schedule after appealing the Immigration Judge's decision."  Resp. 6.  Petitioner responds, arguing that the delay was caused by the Government's denial of his requests for parole.  Reply 10.  Petitioner further argues that his requested continuances, at most, only caused "minimal delay," and that the continuances "were based on just cause as determined by the presiding immigration judge."  Reply 11.

The Third Circuit, in finding that the nearly three year detention of an alien was unreasonable, explained that "individual actions by various actors in the immigration system, each of which takes only a reasonable amount of time to accomplish, can nevertheless result in the detention of a removable alien for an unreasonable, and ultimately unconstitutional, period of time."  *Diop*, 656 F.3d at 223.  This Court agrees that what may be reasonable actions during the course of removal proceedings can combine to create what is ultimately an unreasonable length of detention.  In this case, Petitioner did request and was granted continuances on several occasions to seek legal counsel and to prepare his application for asylum. Resp. 1-2; Reply 10.

31

The Government, however, presented no evidence that Petitioner sought these continuances simply to delay his case; indeed, any resulting delay only served to keep Petitioner in detention longer.  Rather, as the Government explained, Petitioner sought these continuances in order to better prepare his case, which is a reasonable action for an alien seeking relief from removal. Resp. 1-2.  And, at most, this sort of delay has only amounted to approximately six months—a small fraction of the length of Petitioner's current detention.

In determining whether the twenty-six month detention of Petitioner is reasonable, the Court looks to see how courts of appeal have made determinations regarding reasonableness of the length of detention.  The Ninth Circuit applied the six-month presumptive limit on civil detention in *Zadvydas* to detention under § 1225(b), § 1226(a), and § 1226(c).  *Rodriguez II*, 804 F.3d at 1078 ("Following *Zadvydas*, we have defined detention as 'prolonged' when 'it has lasted six months and is expected to continue more than minimally beyond six months." (quoting *Diouf*, 634 F.3d at 1092)).  The Ninth Circuit states that all aliens, no matter which statute they are being detained under, must receive a bond hearing after six months.  *See Rodriguez II*, 804 F.3d at 1078-1085 (requiring bond hearings after six months of detention under §§ 1225(b)(2)(A), 1226(a), and 1226(c))).  While the Ninth Circuit has established a bright-line rule for a reasonable length of detention, *id.*, other circuits look at reasonableness on a case-by-case basis.  *See Ly*, 351 F.3d at 271 (6th Cir.) ("A bright-line time limitation, as imposed in *Zadvydas*, would not be appropriate for the pre-removal period."); *Diop*, 656 F.3d at 233 (3d Cir.) ("We decline to establish a universal point at which detention will always be considered unreasonable.").

This Court need not decide, and indeed is in no position to decide, whether to apply a bright line reasonableness limit of six months or whether reasonableness should be evaluated on

a case-by-case basis, because the Court finds that Petitioner's detention of more than twenty-six months is unreasonable under either standard.  Petitioner committed no immigration violation when he arrived at the port of entry, only one day after the events that serve as the basis for his asylum claim—the murder of his brother and his own subsequent kidnapping and beating.  Pet. 2-3.  As soon as Petitioner presented himself at the border, he sought entry to the United States by lawful means as an asylee.  Resp. 1.  He made no attempt at illegal entry nor did he overstay a visa; he has committed no wrong under the immigration statutes.[5]  In addition, Petitioner received a positive credible fear evaluation from the United States Citizenship and Immigration Services.  Pet. 4.  As a result, Petitioner is no longer subject to expedited removal proceedings, but instead, is subject to Section 240, non-expedited, removal proceedings.  *See In Re X-K-*, 23 I. & N. Dec. 731, 734 (BIA 2005) (explaining "that aliens who had initially been screened for expedited removal [are] placed in full section 240 removal proceedings after a final positive credible fear determination").  Thus, under this regulatory scheme, arriving alien asylum applicants may be detained for years with no opportunity for an individualized review to determine the appropriateness such prolonged detention.  The holdings of *Zadvydas* and *Demore*

---

[5] Interestingly, had Petitioner illegally entered the United States prior to applying for asylum, he would not be classified as an arriving alien subject to § 1225(b)(2)(A) detention because he would not be "coming or attempting to come into the United States at a port-of-entry."  8 C.F.R. § 1001.1(q); *see also In Re X-K-*, 23 I. & N. Dec. 731, 732-33, 36 (BIA 2005) (holding that "certain other aliens"—those "who are encountered by an immigration officer within 100 air miles of any U.S. international land border, and who have not established to the satisfaction of an immigration officer that they have been physically present in the U.S. continuously for the 14-day period immediately prior to the date of encounter"—can have a bond hearing before an immigration judge).  Instead, had Petitioner illegally entered or overstayed a visa prior to seeking asylum, he would be detained pursuant to § 1226(a), and he would be entitled to a bond hearing before an immigration judge.  *See* 8 U.S.C. § 1226(a) (explaining that the Attorney General may release on bond or parole aliens held under this provision); *see also, e.g., Nepomuceno v. Holder*, No. CIV. 11-6825 WJM, 2012 WL 715266, at *1, *3, *4 (D.N.J. Mar. 5, 2012) (explaining that an alien who was detained pursuant to § 1226(a) because he had entered the United States "without being admitted by an immigration officer" received a bond hearing and re-hearing); *Kambo v. Poppell*, No. SA-07-CV-800-XR, 2007 WL 3051601, at *1 (W.D. Tex. Oct. 18, 2007) (explaining that an asylum applicant who was detained pursuant to § 1226(a) "due to his having remained in the United States longer than permitted, in violation of law" received a bond redetermination hearing).

cannot be read to condone such a result.  Indeed, the holding of *Demore* condoned mandatory

detention only for aliens in expedited removal.  *See Rodriguez v. Hayes*, 591 F.3d 1105, 1116

(9th Cir. 2010) ("Section 1226(c) provides for mandatory detention of criminal aliens for

expedited removal."); *see also Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 948

(9th Cir. 2008) (concluding that "the mandatory, bureaucratic detention of aliens under § 1226(c)

was intended to apply for only a limited time"); *Tijani*, 430 F.3d at 1242 (holding that the

authority to detain pursuant to § 1226(c) only applies "to expedited removal of criminal aliens"

and finding that "[t]wo years and eight months of process is not expeditious"); *Shokeh I*, 369

F.3d at 869-70 (explaining that the *Demore* Court's decision to uphold mandatory § 1226(c)

detention was partly based on the brevity of the detention at issue in the case).

The "brief" period of detention of concern in *Demore* lasted "roughly a month and a half

in the vast majority of cases in which it is invoked, and about five months in the minority of

cases in which the alien chooses to appeal." *Demore*, 538 U.S. at 530.  In that case, the alien's

detention was "somewhat longer than the average—spending six months in INS custody." *Id.* at

531.  Although Petitioner's detention is not indefinite or even potentially permanent, as his

removal proceedings will one day end, his detention to date is far from brief.

Sitting in immigration detention for more than two years, having committed no crime in

his attempt to seek asylum in this country, and without any opportunity for an individualized

review of his detention by an immigration judge, the Court finds Petitioner's detention to be

prolonged.  *See Chen v. Aitken*, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013)  (granting habeas

relief upon finding that "petitioner Chen's detention has lasted well beyond the typical period

described in *Demore,* and has become 'prolonged' because neither release nor removal are

imminent"); *see also Bautista*, 862 F. Supp. 2d at 381-82 (stating that "[d]ue process has been

34

long overdue to Bautista" when Bautista was detained, pursuant to § 1225(b)(2)(A), for twenty-six months). Under these circumstances—even without a bright-line rule regarding a reasonable length of mandatory detention—it is clear that Petitioner's twenty-six month mandatory detention is unreasonable.

### 7.    The appropriate remedy is a bond hearing

Now that this Court has determined that Petitioner's twenty-six month mandatory detention pursuant to § 1225(b)(2)(A) is unreasonable, the Court must determine what remedy is appropriate. Petitioner asks this Court to direct the Government to release him from custody and to "[g]rant any additional relief that the Court deems appropriate." Pet. 18. However, many courts have found that bond hearings—in which the Immigration Judge determines whether the alien will "pose a danger to the community or a flight risk—are appropriate habeas relief when an alien's detention is prolonged. *See Casas-Castrillon*, 535 F.3d at 944. For example, several circuit and district courts have granted bond hearings where detention pursuant to § 1226(c) was held to be unreasonable. *See, e.g.*, *Tijani*, 430 F.3d at 1242 ("We remand to the district court with directions to grant the writ unless the government within 60 days of this order provides a hearing to Tijani before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community."); *Casas-Castrillon*, 535 F.3d at 944 (remanding to the district court with instructions to grant the habeas petition, unless the Government provides petitioner with a bond hearing or provides evidence that petitioner has already received a bond hearing); *Reid*, 991 F. Supp. 2d at 277 (holding that "§ 1226(c) includes a 'reasonableness' restriction on the length of time an individual can be detained without a bond hearing"); *see also Diop*, 656 F.3d at 235 ("Should the length of his detention become unreasonable, the Government must justify its

35

continued authority to detain him at a hearing at which it bears the burden of proof.").  Likewise, the Ninth Circuit and several district courts have granted bond hearings for aliens whose detention pursuant to § 1225(b)(2)(A) was found to be unreasonable.  *See, e.g.*, *Rodriguez II*, 804 F.3d at 1070-71 (explaining that "class members detained under § 1226(c) and § 1225(b) are entitled to bond hearings after six months of detention"); *Chen*, 917 F. Supp. 2d at 1018 (finding that the detention of an alien detained pursuant to § 1225(b) and "who intends to appeal the now-issued removal order to the Board of Immigration Appeals, which would further extend his detention—does raise a due process concern sufficient to make an individualized bond hearing appropriate"); *Bautista*, 862 F. Supp. 2d at 382 (granting habeas relief in the form of a bond hearing where alien was detained for twenty-six months pursuant to § 1225(b)(2)(A)); *Centeno-Ortiz v. Culley*, No. 11-CV-1970-IEG POR, 2012 WL 170123, at *9 (S.D. Cal. Jan. 19, 2012) (ordering that an alien who was detained pursuant to § 1225(b)(2)(A), but who was later paroled, should be provided with an individualized bond hearing before an immigration judge if his parole is revoked, explaining that "once the presumptively reasonable detention period expires, the government must justify any further detention by meeting its burden before a neutral decisionmaker").

Petitioner does not specifically request a bond hearing, but instead requests release from detention.  Pet. 17-18.  However, this Court finds that a bond hearing before an Immigration Judge is more appropriate than release in this case "to provide a minimal procedural safeguard" because an immigration judge is in a better position to conduct the sort of individualized review that is necessary to determine if Petitioner should be released during the pendency of his asylum case.  *See Rodriguez II*, 804 F.3d at 1090.  The *Zadvydas* Court stated that civil detention should

be subject to "strong procedural protections," and granting a bond hearing will ensure that Petitioner receives these procedural protections. *See Zadvydas*, 533 U.S. at 690-91.

Petitioner has been detained for over twenty-six months without a bond hearing or any type of process to determine if the justifications for civil immigration detention—ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community—properly apply to him such that continued detention is appropriate. This Court finds that a bond hearing is the appropriate remedy in Petitioner's case.

## III.    CONCLUSION

For the reasons set forth above, Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 is **GRANTED** in part as follows:

1. Within twenty-one days of the date of this order, the Government shall provide Petitioner with a bond hearing before an immigration judge to consider the appropriateness of his release during the pendency of his immigration proceedings.

2. If a hearing is not held within twenty-one days, the Government shall release Petitioner from detention under reasonable supervision conditions.

**IT IS FURTHER ORDERED** that the Government's request to dismiss as to Respondents Loretta E. Lynch, United States Attorney General; Jeh Johnson, Secretary of United States Department of Homeland Security; and Sarah Saldana, Director of United States Immigration and Customs Enforcement is **GRANTED**. The Government's request to dismiss as to Respondent Warden Don Franklin, Warden of the West Texas Detention Facility, is **DENIED**.

**SO ORDERED.**

SIGNED this 15th day of December, 2015.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE